ROSELLE PARK TRUST COMPANY, a corporation, complainant-appellant,

*v.*

JOSHUA D. LOISEAUX, ROBERT TOWNE and HENRY KREH, JR., receivers of Drake Corporation, et al., defendants-respondents.

[Submitted May 26th, 1933.  Decided September 27th, 1933.]

On appeal from a decree of the court of chancery advised by Vice-Chancellor Buchanan, who filed the following opinion:

"The bill is filed by complainant as judgment creditor of the Drake Company, against the receivers of the Drake Company, and the Franklin-Washington Trust Company, to have set aside, as in fraud of creditors, certain assignments made by the Drake Company to the Franklin-Washington Trust Company, conveying bonds and mortgages made to the Drake Company as mortgagee.  The Drake Company was adjudicated insolvent some nine months after the making of the assignments.

"The bonds and mortgages in question are the Hemhauser mortgage of $3,800; the Sommer mortgage of $7,600, and

the Semboy mortgage of $6,000. They were assigned by the Drake Company to the Franklin-Washington Trust Company on March 1st, 1929 (the Hemhauser and Sommer mortgage in one assignment and the Semboy mortgage in another assignment); the assignments being absolute in form.

"Complainant charges that the assignments in fact were intended only as collateral security for a loan of some $5,400 made by the Franklin-Washington Trust Company to the Drake Company; that that loan has since been reduced; and that the Franklin-Washington Trust Company should be decreed to hold the mortgages only as security for the present amount due on that loan, and that complainant is entitled, under its judgments, executions and levies, to the excess value of proceeds of the mortgages.

"The proofs show that the Hemhauser and Sommer mortgages were first assigned by the Drake Company to one Andress Floyd (an officer and principal stockholder of the Drake Company), in 1926, in consideration of an indebtedness then due from the Drake Company to Floyd in larger amounts than the sum of the two mortgages; that affidavits and copies of resolutions corroborating this situation were delivered at the same time to Floyd; that Floyd immediately assigned and delivered the two mortgages (and the accompanying affidavits) to the predecessor of the Franklin-Washington Trust Company as security for loans or indebtednesses due from him personally to that bank; that the mortgages continued to be so held by that bank and its successor, the Franklin-Washington Trust Company, until March, 1929.

"The proofs further show an assignment (of the two mortgages) by the Franklin-Washington Trust Company back to Floyd, dated February 21st, 1929; an assignment by Floyd to the Drake Company, dated March 1st, 1929; and on the same date an assignment by the Drake Company back to the Franklin-Washington Trust Company; that these last three assignments were all recorded at the same day and hour; and an assignment of the Semboy mortgage, on the same date, March 21st, 1929, from the Drake Company to the Franklin-Washington Company.

"It further appears that the Franklin-Washington Trust Company made a loan to the Drake Company on February 28th, 1929, of $6,000 (since reduced to $3,305, plus interest); that at that time Floyd was still indebted to the bank, but apparently in no considerable amount; that it was agreed and arranged between Floyd and Drake Company and the bank that the bank should make the $6,000 loan to the Drake Company, and receive the assignment from Drake Company of the $6,000 Semboy mortgage, and that the Hemhauser and Sommer mortgage should be assigned back to Floyd and from Floyd to Drake Company, and from Drake Company direct to the bank, to be held by the bank first as additional collateral for the $6,000 loan to Drake Company, and secondarily as collateral for any indebtedness due or to become due from Floyd to the bank; and that this arrangement was in fact carried out.

"The evidence as to the terms of this arrangement, it is true, is only the verbal testimony of Mr. Elmer, an officer of the bank. The credibility of this witness, however, is not impeached and his testimony is in nowise contradicted, except that Floyd testified he could not remember the conversation he had with the bank at that time (March, 1929). Even if Floyd's testimony should be interpreted as a denial of such conversation, it would not outweigh Elmer's testimony; Floyd's testimony as a whole is uncertain and unsatisfactory; and the burden of proof is of course on complainant.

"There is, moreover, corroboration in the uncontradicted testimony that the bonds and mortgages and accompanying papers never left the possession of the bank. There is no evidence of any other reason or consideration for any reassignment of the bonds and mortgages back to the Drake Company.

"It is concluded therefore that complainant has failed to establish its contention that the Franklin-Washington company has no right to retain the Hemhauser and Sommer mortgages as security for the indebtedness of Floyd (amounting to $5,542.33, with interest). It has, however, established its right as against the Franklin-Washington Trust Company, to any excess of proceeds realized on these bonds and mort-

gages over the amount of some $9,000 and interest for which the Franklin-Washington Trust Company is entitled to hold the three bonds and mortgages as collateral security—established its right to have the lien of its judgment executions attach to the equity of redemption formerly owned by the Drake Company in these bonds and mortgages. It has established this right not only as against the Franklin-Washington Trust Company but as well against the Drake Company receivers. The latter set up the defense that complainant's judgments and executions were obtained while the Drake Company was insolvent and within four months prior to the filing of the insolvency bill against the Drake Company, and are therefore null and void as against the receivers under *P. L. 1919 ch. 208.* The proofs show that the judgments and executions were obtained within the four months' period, and that the Drake Company was insolvent at the time of the filing of the insolvency bill. The proofs, however, fail to establish that the Drake Company was insolvent at the time the executions were levied or at the time the judgments were recovered. The defense was an affirmative defense and the burden of establishing it was on defendants.

"No costs will be allowed. As between complainant and the Franklin-Washington Trust Company, each was successful in part; as to the Drake Company receivers, it does not appear that complainant was put to any trouble or expense, since even the negligible cost of serving them with process was avoided by acknowledgment of service by the solicitor of the receivers."

*Mr. Martin P. O'Connor,* for the appellant.

*Mr. Milton M. Unger,* for the respondent Franklin-Washington Trust Company.

PER CURIAM.

The decree appealed from will be affirmed, for the reasons expressed in the opinion of Vice-Chancellor Buchanan delivered in the court of chancery.

*For affirmance*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, DILL, JJ. 14.

*For reversal*—None.